STATE OF NEBRASKA, APPELLEE, V.
MELL T. WOSTOUPAL, APPELLANT.

304 N.W.2d 393

Filed April 10, 1981. No. 43529.

Vince Kirby for appellant.

Paul L. Douglas, Attorney General, and Robert F. Bartle for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

CLINTON, J.

Defendant, Dr. Mell T. Wostoupal, a veterinarian and owner of Oink, Inc., appeals from an order by the District Court for Stanton County holding him in contempt for violating a court order which enjoined the movement of swine off the Oink, Inc., premises except under specified conditions. Defendant assigns as error on appeal that the contempt proceedings against him were defective because the accusation filed by the State was not notarized. We affirm.

A short factual summary is necessary to understand defendant's assignment of error. On March 27, 1978, the Nebraska Department of Agriculture, acting on information from the Missouri Department of Agriculture, Animal Health Division, concerning pseudorabies found among swine transported to Missouri, issued a quarantine restricting any movement of swine from the Oink, Inc., premises "other than direct to slaughter . . . until the entire swine herd" was "tested negative under either State or Federal supervision." The Department of Agriculture amended the quarantine 3 days later to cover all swine owned by Oink, Inc., and defendant in Stanton County. Defendant received the quarantine notice on March 31, 1978.

In August 1978 the State, acting on behalf of the Department of Agriculture, petitioned for an injunction against the movement of swine from Oink, Inc. The State's petition alleged various violations of the above-mentioned quarantine. Following a hearing, the District Court issued a temporary injunction on August 21, 1978. Four months later, on December 5, 1978, a permanent injunction was issued pursuant to a stipulation

made by both parties. The permanent injunction set forth specific conditions under which swine could be moved from Oink, Inc.

During January 1980 the State filed an affidavit and motion for contempt against defendant. The affidavit, which was properly notarized and set forth the terms of the court's order of injunction, alleged that defendant had *intentionally* violated the conditions set forth by the permanent injunction in 23 separate instances. For each alleged violation the affidavit named the number of swine moved, to whom they were sold, and the location where they were sent and that they were sold as feeder pigs. The District Court issued a show cause order. Following a hearing the court ordered the State to file a written accusation against defendant. The State filed an unnotarized accusation 6 days later which summarized the permanent injunction, stated the alleged violations, specified damages caused by the alleged violations, and prayed that defendant be found guilty of contempt. The accusation differed from the affidavit in that instead of using the words "intentionally disregarded," it used the terms "knowingly, willfully, contumaciously, and contemptuously refused to obey." Defendant demurred on six grounds and also filed a motion to dismiss. None of the grounds alleged in either defendant's demurrer or motion are the same as the error which he assigns in this appeal. The demurrer and motion to dismiss were overruled after a hearing on March 7, 1980. One week later, defendant pleaded that he had violated the permanent injunction and consented to a finding that he was guilty of contempt. The court found defendant guilty of contempt, laid down conditions under which he could purge himself, and deferred sentencing. Three months later, after several proceedings which are not the subject of this appeal, defendant was sentenced to 3 months in jail upon the court's finding that he had failed to purge himself of contempt.

Defendant argues that contempt proceedings, for

contempt committed outside the presence of the court, must be initiated by an information or accusation and affidavit alleging the specific facts constituting contempt; both pleadings, he claims, must be properly verified, hence, the finding that he is in contempt is void because the accusation filed by the State was not notarized.

The record clearly shows that the State filed a properly notarized affidavit and motion for contempt before filing its accusation. There is no question raised as to the affidavit's verification, hence, no jurisdictional issue of the type mentioned in *Belangee v. State*, 97 Neb. 184, 149 N.W. 415 (1914), and *Herdman v. State*, 54 Neb. 626, 74 N.W. 1097 (1898), is presented. Likewise, no issue concerning the sufficiency of the affidavit and motion for contempt in providing defendant with notice as required under Neb. Rev. Stat. § 25-2122 (Reissue 1978) is raised. Furthermore, this court has recognized the propriety of notifying a party to criminal contempt through an affidavit for contempt and a motion to hold in contempt as was done here. *Sempek v. Sempek*, 198 Neb. 300, 252 N.W.2d 284 (1977). There we held: "Contempts may be prosecuted by affidavit, and such an affidavit serves the purpose of a pleading. . . . Where the reading of an affidavit for contempt clearly indicates that the alleged violation of a court order was willful, the failure to use that express word does not render the affidavit defective." (Syllabi of the court.)

Only the issue of the State's failure to have the court-ordered accusation notarized is presented in this appeal. This court has held that formal defects in an information are waived by a defendant in a criminal contempt action if he fails to object to such defects before proceeding to trial. *Zimmerman v. State*, 46 Neb. 13, 64 N.W. 375 (1895) (overruled on other grounds). See, also, 17 C.J.S. *Contempt* § 74, pp. 191-92; *The People v. Severinghaus*, 313 Ill. 456, 145 N.E. 220 (1924). Defendant did not object to the State's failure to have the

accusation against him notarized before he pleaded guilty to it and proceeded to judgment. He thereby waived his right to raise the defect on appeal.

AFFIRMED.